# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

SEIT ALLA, Individually and ) 
on behalf of all others similarly situated, ) 
            )      Case No. 17-cv-657 
         Plaintiff, ) 
v.                     ) 
                    )      **CLASS ACTION COMPLAINT** 
DOLGENCORP, LLC (d/b/a DOLLAR ) 
GENERAL CORPORATION), ) 
                    ) 
        Defendant. )      **Jury Trial Demanded**

Plaintiff Seit Alla ("Plaintiff"), individually and on behalf of all others similarly situated, makes the following allegations based on his personal knowledge of his own acts and, otherwise, upon information and belief including based on investigation of counsel.

## NATURE AND SUMMARY OF THE ACTION

1.     Plaintiff, by and through undersigned counsel, brings this action both on his own behalf and on behalf of the class defined below, comprised of all individuals similarly situated within the State of Wisconsin, to redress the unlawful commercial practices employed by Defendant, DOLGENCORP, LLC, (d/b/a Dollar General, Corporation), (hereinafter "Dollar General" and/or "Defendant") in connection with its marketing and sale of its company-branded motor oil sold in its stores.

2.     At all relevant times, and beginning in 2010, Dollar General sold an entire line of company-branded motor oils (labeled "DG Auto") that was obsolete and potentially harmful to its customers' automobiles by using deceptive and misleading sales and marketing tactics including: (a) positioning its DG Auto line of obsolete motor oils immediately adjacent to the more expensive standard- and premium-quality brand-name motor oils implicitly marketing the

motor oil as a lower priced equivalent motor oil suitable for modern cars, and (b) failing to adequately warn its customers that its DG Auto motor oil is unsuitable for the vast majority, if not all, of its customers' vehicles.

3.     Plaintiff alleges that Dollar General engaged in these unlawful and deceptive business practices in violation of Wisconsin law.

## PARTIES

4.     Plaintiff Seit Alla is an individual adult resident citizen of the City of South Milwaukee, County of Milwaukee, State of Wisconsin and is a member of the Class alleged herein.

5.     Beginning in 2014, Plaintiff purchased numerous quarts of Dollar General's DG Auto SAE 10W-30 motor oil from Dollar General's stores in South Milwaukee, Wisconsin, for use in his vehicle.  Plaintiff put 6 quarts of Dollar General's DG Auto SAE 10W-30 motor oil in his 1996 Land Rover Range Rover approximately every 3,000 miles.

6.     Defendant DOLGENCORP, LLC, d/b/a Dollar General Corporation, is incorporated under the laws of the State of Kentucky, with its headquarters located at 100 Mission Ridge, Goodlettsville, Tennessee.

7.     At all relevant times, Defendant produced, marketed, distributed and sold its obsolete DG Auto motor oil in its stores throughout the United States, including in the State of Wisconsin, utilizing deceptive and misleading marketing and sales practices intended to deceive Plaintiff and Class Members into purchasing its obsolete motor oil for use in their modern-day vehicles knowing that its motor oil was obsolete and likely to cause damage to any such vehicle.

2

8.     Defendant maintains approximately 126 stores throughout the State of Wisconsin. As such, Wisconsin courts maintain a significant interest in regulating Defendant's conduct which emanates from Wisconsin, yet deceives consumers nationwide.

## JURISDICTION AND VENUE

9.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because members of the proposed Class are citizens of states different from Defendant's home state, there are more than 100 Class Members, and the amount-in-controversy exceeds $5,000,000 exclusive of interest and costs.

10.     This Court has jurisdiction over the Defendant named herein because Defendant is a foreign corporation or association authorized to do business in Wisconsin, does sufficient business in Wisconsin, and has sufficient minimum contacts with Wisconsin and/or otherwise intentionally avails itself of the laws and markets of Wisconsin, through the promotion, sale, marketing and distribution of its merchandise in Wisconsin, to render the exercise of jurisdiction by the Wisconsin courts permissible.

11.     Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant's improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district, because Defendant has caused harm to Class Members residing in this district, and/or because the Defendant is subject to personal jurisdiction in this district

12.     In addition, Defendant operates approximately 126 stores in Wisconsin and has received substantial compensation from Wisconsin consumers who purchase goods from Defendant.

## FACTUAL ALLEGATIONS

13.      Dollar General operates a chain of variety stores headquartered in Goodlettsville,

Tennessee. As of February 2016, Dollar General operated more than 12,575 retail stores in 43 states, including 126 stores in the State of Wisconsin.

14. Dollar General is a discount retailer focused on low and fixed income consumers in small markets. Dollar General's business model includes locating its stores in rural, suburban communities. In its more densely populated markets, Dollar General's customers are generally from the neighborhoods surrounding the stores. Dollar General's stores are located with the needs of its core customers (low and fixed income households) in mind.

15. Dollar General offers basic, every day and household goods, along with a variety of general merchandise at low prices to provide its customers with one-stop shopping opportunities, generally in their own neighborhoods.

16. In addition to offering name brand and generic merchandise, Dollar General distributes and markets its own lines of inexpensive household products, which bear the designation "DG." DG lines include "DG Auto," "DG Hardware" "DG Health" and "DG Office."

17. Beginning in 2010, Dollar General's DG Auto line of motor oils consisted of three types of obsolete motor oil: DG Auto SAE 10W-30 (API service category SF), DG Auto SAE 10W-40 (API service category SF) and DG Auto SAE30 (API service category SA) that fail to protect and can actively damage, modern day automobiles. As used hereinafter in this Complaint, the term "DG Auto Obsolete Motor Oil Products" refers to the aforementioned obsolete motor oil products sold by Dollar General under its DG Auto private label.

18. Prior to the introduction of the DG Auto brand in 2010, Dollar General sold its obsolete motor oil under a different private label: the "Uni-lab" label.

19.     Upon information and belief, in 2016, in addition to the DG Auto Obsolete Motor Oil Products, Dollar General began selling API service category SN motor oil products under its DG Auto label. Plaintiff's allegations do not relate to Dollar General's SN motor oil products.

20.     Motor oils lubricate the engines of automobiles.  Their main function is to reduce wear on an engine's moving parts.  Motor oils also inhibit corrosion, improve sealing and keep engines properly cooled.

21.     Motor oils have evolved in parallel with the automobiles they are meant to protect.  Institutions like the Society of Automotive Engineers ("SAE") employ rigorous tests to ensure that motor oils meet evolving standards relating to, among other criteria, sludge buildup, temperature volatility, resistance to rust, resistance to foaming, resistance to oil consumption, homogeneity and miscibility.

22.     Motor oils designed to protect engines from earlier eras do not protect, and can harm, modern-day engines.  Thus, motor oil that would be suitable to use in an engine manufactured in the 1980's or earlier is not suitable for use in modern-day engines. However, current, non-obsolete motor oils are backwards compatible and are suitable for engines manufactured in earlier years.

23.     Dollar General's DG Auto SAE 10W-30 and DGAuto SAE 10W-40 motor oil products are manufactured to the API service category SF specification, which is obsolete and not suitable for motor vehicles built after 1988.  Dollar General's DG Auto SAE30 motor oil product is manufactured to the API service category SA specification, which is not suitable for motor vehicles manufactured after 1930.

24.     Plaintiff asserts that Dollar General engaged in the unfair, unlawful, deceptive and fraudulent practice of marketing, selling and causing to be manufactured less expensive, obsolete

motor oil that is unsuitable for, and can harm, the vehicles driven by the overwhelming majority of Dollar General's customers.

25.     Dollar General misled and deceived its customers by using misleading product placement tactics and misleading product labels to obscure the critical fact that its DG Auto Obsolete Motor Oil Products are unfit for, and can harm, the vehicles driven by the vast majority, if not all, of its customers.

26.     The front label of Defendant's DG Auto Obsolete Motor Oil Products use the same or similar SAE nomenclature (*e.g.*, 10W-30, 10W-40, SAE 30) found on the other brands of non-obsolete motor oil sold by Dollar General and beside which it places its DG Auto Obsolete Motor Oil Products on its shelves.

27.     Dollar General's DG Auto Obsolete Motor Oil Products bear the designation "DG Auto" and are prominently labelled "Motor Oil" on the front of the container.

28.     The front label of Dollar General's DG Auto SAE 10W-30 and DG Auto SAE 10W-40 motor oils specifically states: "Lubricates and protects your engine."

29.     The front labels of Dollar General's DG Auto Obsolete Motor Oil Products also show a prominent checkered flag, suggestive of auto racing and similar to signage on other premium motor oils.

30.     A reasonable consumer would believe and expect that these products are suitable for use in automotive engines in cars actually in use on the date of sale and that these products will lubricate and protect such engines.

31.     The average consumer does not know that obsolete motor oils exist or what obsolete motor oil is, and would have no reason to check any small print on the back label of a motor oil container.

6

32.     There is no suggestion on the front label or principal display panel that the consumer should check any small print on the back or that the DG Auto obsolete motor oil is different in kind and quality from the surrounding motor oils.

33.     Only in small print on the back label of Dollar General's DG Auto SAE 10W-30 and DG Auto SAE 10W-40 motor oils can the statement that these products are "not suitable for use in most gasoline powered automotive engines built after 1988" and "may not provide adequate protection against the build-up of engine sludge" be found.  Similarly, the statement that Dollar General's DG Auto SAE 30 motor oil is "not suitable for use in most gasoline powered automotive engines built after 1930," and that its "use in modern engines may cause unsatisfactory engine performance or equipment harm" appears only in small print on the back of the DGAuto SAE 30 motor oil container.

34.     Based on Dollar General's product placement and the front label, a reasonable consumer has no reason to examine the back label of DGAuto Obsolete Motor Oil Products.

35.     Dollar General conceals this language by rendering it in small, less readable font and confining it to the products' back label, which is not visible when the products are on the store shelves.

36.     Dollar General further conceals this language by placing it below a message that presents a misleading impression of the product.

37.     For the DG Auto SAE 10W-30 and DG Auto SAE 10W-40 products, the language preceding the non-suitability statement reads that the DG Auto SAE 10W-30/DG Auto SAE 10W-40 "motor oil is an all-season, multi-viscosity, heavy duty detergent motor oil recommended for gasoline engines in older model cars and trucks.  This oil provides oxidation stability, anti-wear performance, and protection against deposits, rust and corrosion."

7

38.     For DG Auto SAE 30 motor oil, the language preceding the non-suitability statement reads: "DG Quality SAE 30 is a non-detergent motor oil designed for use in older engines where consumption may be high and economical lubricants are preferred."

39.     Dollar General has no reason to believe that motor oil shoppers take the added time to read a back label, but if they did, they would be further misled.

40.     Dollar General's DG Auto Obsolete Motor Oil Products are not suitable for use in almost all of the vehicles currently in use at the time the products are sold.

41.     Few, if any, of Defendant's customers drive vehicles for which these products are safe, and the use of the term "older" is a relative term that does not inform a reasonable consumer that these motor oils are not safe for cars manufactured within the past 27 years, or in the case DG Auto SAE 30 motor oil, the past 85 years.

42.     Dollar General also fails to disclose to consumers that the other motor oils that it sells, which are not obsolete, are backwards compatible and thus, are suitable for use in older model automobiles.

43.     Dollar General further disguises the obsolete and harmful nature of its motor oils with its positioning of these motor oils on its shelves in a misleading manner.

44.     Dollar General places its DG Auto Obsolete Motor Oil Products adjacent to the other brands of motor oil that it sells, such as PEAK, Pennzoil, and Castrol; these other brands are non-obsolete motor oils that, unlike the DG Auto Obsolete Motor Oil Products, are meant to be used in modern automotive engines.

45.     All of the motor oils sold by Dollar General, including its DG Auto Obsolete Motor Oil Products, use the same or similar standard SAE viscosity nomenclature on the front or principal display panel (*e.g.,* 10W-30, 10W-40, SAE 30).

8

46.     The only apparent difference between the DG Auto Obsolete Motor Oil Products and the other mainstream, non-harmful, and useful brands of motor oils sold by Dollar General is the price, as its DG Auto Obsolete Motor Oil Products are less expensive than the others.

47.     Dollar General's placement of itsDG Auto Obsolete Motor Oil Products next to these other brands of motor oil defines or anchors the DG Auto Obsolete Motor Oil Products as simply another (and less expensive) variety of the same product as the other brands displayed.

48.     In addition, the quantities of the DG Auto Obsolete Motor Oil Products on display are similar to the quantities displayed of other brands of motor oil that are suitable for modern day vehicles, telling the typical shopper that, like those other brands, the DG Auto Obsolete Motor Oil Products have widespread use and that legitimate demand for the productsare similar in volume to demand for the other motor oils on display.

49.     Dollar General's placement of its DG Auto Obsolete Motor Oil Products on the same shelves and in similar quantities as the other motor oils tells the typical Dollar General shopper that the products are the same, and conceals the fact that its DG Auto Obsolete Motor Oil Products have an extremely obscure and limited use, that the products are obsolete products, and that these motor oils are likely to cause damage to the engines of most of Dollar General's customers' cars.

50.     Dollar General's product positioning and the deceptive labels on its DG Auto Obsolete Motor Oil Products are likely to deceive reasonable consumers.

51.     Dollar General has no reason to believe that the average consumers would knowingly buy obsolete motor oil, because it has no automotive utility and is a worthless product.  The products can in fact be harmful to automobiles.  Dollar General only sells its DGAuto Obsolete Motor Oil Products because it misleads and deceives consumers.

9

52.    Dollar General also fails to warn its customers adequately of the obsolete nature of its DG Auto Obsolete Motor Oil Products or of the dangers its DG Auto Obsolete Motor Oil Products pose to the very automobiles their customers are trying to protect by purchasing its DG Auto Obsolete Motor Oil Products.  An adequate warning for Dollar General's obsolete motor oils would be displayed conspicuously and on the principal display panel and would inform its customers of the appropriate uses, if any, of the various types of DG Auto Obsolete Motor Oil Products.  However, Dollar General provides its customers with no such conspicuous warnings. Instead, it buries the aforementioned statements on the back of its products in small type where customers are unlikely to encounter them.

53.    DG Auto SAE 10W-30 bears the following labels on its front (left) and back (right):



The photograph below is a close-up of DG Auto SAE 10W-30's back label, which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1988" and "IT MAY NOT PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF ENGINE SLUDGE":

10



54.     DG Auto SAE 10W-40 bears the following labels on its front (left) and back (right):



The following photograph is a close-up of DG Auto SAE 10W-40's back label, which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1988" and "IT MAY NOT PROVIDE ADEQUATE PROTECTION AGAINST THE BUILD-UP OF ENGINE SLUDGE":



55.     Prior versions of the DGAuto SAE 10W-40 label provided even less warnings.

56.     DG Auto SAE 30 bears the following the labels on its front (left) and back (right):



The photograph below is a close-up of DG Auto SAE 30's back label which includes the warnings, "IT IS NOT SUITABLE FOR USE IN MOST GASOLINE POWERED AUTOMOTIVE ENGINES BUILT AFTER 1930" and "USE IN MODERN ENGINES MAY CAUSE UNSATISFACTORY ENGINE PERFORMANCE OR EQUIPMENT HARM":



57. Prior versions of the DG Auto SAE 30 label provided even less warnings.

58. Prior to converting to its DG Auto label, Dollar General sold the same obsolete motor oil under its "Uni-Lab" label, selling both SAE 30 and SAE 10W-40 Uni-Lab products.

59. Upon information and belief, at all relevant times, the front label of Dollar General's Uni-Lab SAE 10W-40 motor oil product specifically warned customers that the product was for pre-1988 automobiles.

60. When Dollar General switched to its DG Auto label, it knowingly and willingly removed that specific warning language from the front of the product and hid it on the back in smaller, less readable font.

61. Dollar General's entire line of DG Auto Obsolete Motor Oil Products is unsuitable for the modern-day vehicles driven by its customers, except that it is successfully deceiving a sufficient number of customers to make this fraudulent practice profitable and therefore worthwhile.

62. It is unfair, unlawful, deceptive, and fraudulent for Dollar General to distribute, market, and sell an entire line of motor oil that is unfit for, and presents concrete dangers to, the vast majority of vehicles driven by its customers.

63.     Dollar General knew or should have known that its customers are being deceived by its marketing tactics described above.

64.     Wisconsin's consumer protection laws are designed to protect consumers from this type of deceptive advertising and predatory conduct.

65.     Defendant's unfair and deceptive course of conduct victimized all purchasers of Dollar General's DG Auto Obsolete Motor Oil Products throughout the State of Wisconsin.

66.     As a direct and proximate result of Dollar General's deceptive and fraudulentpractices, Plaintiff and the Class Members purchased a product they would not have otherwise purchased and have suffered and will continue to suffer economic damages. Indeed, Dollar General's DG Auto Obsolete Motor Oil Products are worthless.

67.     In addition, many Class Members have sustained damage to their automobiles as a result of the use of Dollar General's DG Auto Obsolete Motor Oil Products and have suffered and will continue to suffer economic damage as a result.

68.     Plaintiff therefore brings the statutory and common law claims alleged herein to halt Dollar General's deceptive practices and to obtain compensation for the losses suffered by Plaintiff and all Class Members.

## CLASS ACTION ALLEGATIONS

69.     Plaintiff brings this class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all members of the following Class:

**All persons in the State of Wisconsin who purchased Defendant's DG Auto Obsolete Motor Oil Products, DG Auto SAE 10W-30, DG Auto SAE 10W-40 and/or DG Auto SAE 30, for personal use and not for re-sale, from May 8, 2011 to the present.**

70.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

71.    Specifically excluded from the proposed Class are Dollar General, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, successors, assigns, or other persons or entities related to or affiliated with Dollar General and/or its officers and/or directors, or any of them.  Also excluded from the proposed Classare the Court, the Court's immediate family and Court staff.

72.    **Numerosity.** Membership in the Classis so numerous that separate joinder of each member is impracticable.  The precise number of Class Members is unknown at this time but can be readily determined from Defendant's records.  Plaintiff reasonably estimates that there are tens of thousands of persons in the Class.

73.    **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has retained counsel highly experienced in complex consumer class action litigation and intends to prosecute this action vigorously.  Plaintiff is a member of the Class described herein and does not have interests antagonistic to, or in conflict with, the other members of the Class.

74.    **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff and all members of the Class purchased obsolete, harmful, deceptively labeled and deceptively marketed motor oil from Dollar General and were subjected to Defendant's common course of conduct.

75.    **Existence and Predominance of Common Questions of Law and Fact.**  There are numerous and substantial questions of law and fact common to all Class Members that

control this litigation and predominate over any individual issues. Included within the common questions are:

a) The amount of Defendant's DG Auto Obsolete Motor Oil Productsit sold relative to the other brands of oil on its shelves;

b) The amount of Defendant's DG Auto Obsolete Motor Oil Productsit sold relative to the limited number of automobiles for which these motor oils are appropriate;

c) Whether Defendant studied the effect of its product placement on its shelves;

d) Whether Defendant studied or tested its label and the effect of its labels on consumers' perceptions;

e) Whether Defendant studied the susceptibility of consumers to these marketing practices;

f) The cost to Defendant to buy, distribute, market and sell its DG Auto Obsolete Motor Oil Products compared to the revenue it received from its sales;

g) Whether Defendant misrepresented the safety and suitability of its DG Auto Obsolete Motor Oil Productsthat it sold;

h) Whether Defendant's conduct of placing the DG Auto Obsolete Motor Oil Products next to legitimate, useful motor oil is likely to deceive reasonable consumers;

i) Whether the warnings provided on the labels of Dollar General's DG Auto Obsolete Motor Oil Products were adequate and/or conspicuous;

j) Whether Defendant had any reason to believe their "grab and go" customers would read the back label of any motor oil;

16

k)  Whether Defendant deliberately misrepresented or failed to disclose material facts to Plaintiff and Class Members regarding the obsolete and harmful nature of its DG Auto Obsolete Motor Oil Products;

l)  Whether Defendant's conduct and scheme to defraud Plaintiff and Class Members is unfair, misleading, deceitful, and/or unlawful;

m) Whether the acts of Defendant violated, *inter alia*, the applicable state, common and statutory law;

n)  Whether Plaintiff and the Class have been damaged;

o)  The proper method for calculating the damages suffered by Plaintiff and Class Members; and

p)  Whether Plaintiff and Class Members are entitled to declaratory, injunctive and/or other equitable relief.

76.    **Common Issues Predominate:** As set forth in detail herein above, common issues of fact and law predominate because all of Plaintiff's claims are based on a deceptive common course of conduct. Whether Dollar General's conduct is likely to deceive reasonable consumers and breaches the implied warranties of merchantability and fitness for a particular purpose is common to all members of the Class and are the predominate issues, and Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims

77.    **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a) Given the size of the claims of individual Class Members, as well as the resources of Dollar General, few, if any, could afford to seek legal redress individually for the wrongs alleged herein;

b) This action will permit an orderly and expeditious administration of the claims of Class Members, will foster economies of time, effort and expense and will ensure uniformity of decisions;

c) Any interest of Class Members in individually controlling the prosecution of separate actions is not practical, creates the potential for inconsistent or contradictory judgments and would create a burden on the court system;

d) Without a class action, Class Members will continue to suffer damages, Defendant's violations of law will proceed without remedy, as small individual claims are not viable, and Defendant will continue to reap and retain the substantial proceeds derived from its wrongful and unlawful conduct. Plaintiff and the Classes have suffered damages as a result of Defendant's unlawful and unfair conduct. This action presents no difficulties that will impede its management by the Court as a class action.

78. Certification is also warranted under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief and declaratory relief appropriate with respect to the Class as a whole.

79. The claims asserted herein are applicable to all individuals throughout Wisconsin who purchased obsolete, harmful, deceptively labeled and deceptively marketed motor oil from Dollar General.

18

## CLAIMS FOR RELIEF

Based on the foregoing allegations, Plaintiff's claims for relief include the following:

## COUNT I

### Violations of the Wisconsin Deceptive Trade Practices Act
### (Wis. Stat. Ann. § 100.18, *et seq.*)

80.    Plaintiff hereby incorporates by reference each of the preceding paragraphs as though fully set forth herein.

81.    The Wisconsin Deceptive Trade Practices Act ("WDTPA") makes it unlawful to make any "advertisement, announcement, statement or representation [that] contains any assertion, representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).  The WDTPA provides a private right of action for "[a]ny person suffering pecuniary loss" because of a violation of the WDTPA. Wis. Stat. § 100.18(11)(b)2.

82.    In the course of the Defendant's business, Defendant willfully and actively concealed the true facts about the actual product that it was marketing.  Defendant engaged in conduct which created and continues to create, a likelihood of confusion or of misunderstanding for Plaintiff, the Class Members, and the consuming public.

83.    Defendant's actions as set forth above occurred in the conduct of trade or commerce and constitute unfair or deceptive trade practices under the WDTPA.

84.    Plaintiff and the Class relied upon and were deceived by the Defendant's unfair and deceptive misrepresentations of material fact in deciding whether to purchase the Defendant's DG Auto Obsolete Motor Oil Products.

85.    Plaintiff and the Class were injured as a result of the Defendant's conduct, and suffered ascertainable monetary loss.  Plaintiff and the Class overpaid for the products they purchased from Defendant and did not receive the benefit of their bargain.

86. Plaintiff seeks an award of pecuniary loss, attorney's fees, and costs as permitted by the WDTPA.

## COUNT II

### Unfair Methods of Competition and Trade Practices In Business
### (Wis. Stats. § 100.20, *et seq.*)

87. Plaintiff hereby incorporates by reference each of the preceding paragraphs as though fully set forth herein.

88. Defendant's motor oil is a "consumer commodity" pursuant to ATCP 90.01(5)(e), in that the motor oil is customarily produced and distributed for retail sale to consumers, used by consumers for purposes of consumption, personal care, or the performance of household tasks (i.e. lubricating the engine of the consumer's car), and is normally fully expended during use by the consumer.

89. ATCP 90.02(1), Wis. Admin. Code requires Defendant to label and identify its consumer products, including motor oil. The provision states: "No person may sell or distribute a consumer commodity in package form unless each package clearly and conspicuously identifies the commodity contained in that package." *Id.*

90. ATCP 90.02(3), Wis. Admin. Code prohibits such identifications from being false, deceptive, or misleading.

91. Defendant's labeling of its products to conceal the fact that Defendant's motor oil was obsolete and not suitable for use in the vehicles driven by the vast majority, if any, of Dollar General's customers was false, deceptive, and/or misleading.

92. After and due to seeing Defendant's false, deceptive, and/or misleading labeling and identification of its product, Plaintiff reasonably believed, and Plaintiff and the Class were

reasonably likely to believe, that DG Auto Obsolete Motor Oil Products were appropriate for use in Plaintiff's and Class Members' vehicles.

93.     Plaintiff and the Class would not have purchased DG Auto Obsolete Motor Oil Products altogether had they known that the DG Auto Obsolete Motor Oil Products were not suitable for use in the vehicles driven by the vast majority, if any, of Dollar General's customers.

94.     As a result of Defendant's false, deceptive, and/or misleading labeling and identification of its products, Plaintiff and the Class suffered pecuniary loss in an amount not less than the purchase price of DG Auto Obsolete Motor Oil Products, or a portion thereof, plus interest.

95.     As Defendant's false, deceptive, and/or misleading labeling and identification of its product is a violation of ATCP 90.02, Wis. Admin. Code, Plaintiff and the Class are entitled to twice the amount of their aforementioned pecuniary losses under § 100.20(5), Wis. Stats.

**COUNT III**

**Breach of Implied Warranty of Merchantability**

96.     Plaintiff hereby incorporates by reference each of the preceding paragraphs as though fully set forth herein.

97.     Beginning at an exact date unknown to Plaintiff, but at least since four years prior to the filing date of this action, and as set forth above, Defendant represented to consumers, including Plaintiff and Class Members, by labeling/packaging and other means, that its DG Auto Obsolete Motor Oil Products are safe and suitable for use in the automobiles driven by Dollar General's customers. Plaintiff and Class Members bought those goods from the Defendant.

98.     Defendant was a merchant with respect to goods of the kind which were sold to Plaintiff and Class Members, and there was in the sale to Plaintiff and Class Members an implied warranty that those goods were merchantable.

99.     Defendant breached that warranty implied in the contract for the sale of goods in that Dollar General's DG Auto Obsolete Motor Oil Products are in fact not suitable for use in the vehicles driven by the vast majority, if any, of Dollar General's customers, as set forth in greater detail above.

100.    The DG Auto Obsolete Motor Oil Products at issue were not merchantable under applicable law, as it was not adequately packaged and labeled, as set forth above.

101.    As a result thereof Plaintiff and Class Members did not receive goods as impliedly warranted by Defendant to be merchantable and did not receive the benefit of the bargain when they purchased the DG Auto Obsolete Motor Oil Products.

102.    As a proximate result of this breach of warranty by Defendant, Plaintiff and Class Members have been damaged in an amount to be determined at trial. Plaintiff and Class Members sustained damages including but not limited to the receipt of goods they would not have otherwise purchased which are likely to cause damage to their automobiles if used in the manner reasonably expected. Plaintiff and Class Members have also suffered property damage.

103.    Defendant intentionally, knowingly, willfully, and/or recklessly used deception, false pretense, false promise, misrepresentation and/or concealment of material facts regarding the obsolete and potentially harmful DG Auto Obsolete Motor Oil Products with intent to mislead Plaintiff and Class Members.

104.    Plaintiff gave written notice to Defendant of its breach of implied warranty of merchantability relating to the goods he purchased.

105.    By reason of the foregoing, Defendant is liable to Plaintiff and the Class Members for damages for breach of implied warranty in an amount to be determined at trial, computed as

the difference between the value the motor oil would have had if it had been as warranted and the true value of the motor oil at the time of purchase, which was zero.

**COUNT IV**

**Breach of Implied Warranty of Fitness for a Particular Purpose**

106.     Plaintiff hereby incorporates by reference each of the preceding paragraphs as though fully set forth herein.

107.     Beginning at an exact date unknown to Plaintiff, but at least since four years prior to the filing date of this action, and as set forth above, Defendant represented to consumers, including Plaintiff and Class Members, by labeling, packaging, product display, and other means, that its DG Auto Obsolete Motor Oil Products are safe and suitable for use in the automobiles currently in use at the time of the products were sold.

108.     Defendant was a merchant with respect to its DG Auto Obsolete Motor Oil Products that were sold to Plaintiff and Class Members, and with respect to other goods of that kind.

109.     Defendant sold these goods to Plaintiff and Class Members.

110.     There was in each sale of DG Auto Obsolete Motor Oil Products an implied warranty that those goods were fit for the particular purpose of lubricating and protecting engines in automobiles currently in use at the time the product was sold.

111.     At the time of the sale of the product, Defendant had reason to know that Plaintiff and Class Members would use the DG Auto Obsolete Motor Oil Products as motor oil in their modern day motor vehicles and expose their vehicles to the products' potentially harmful qualities.  At the time of sale, Defendant had reason to know the particular purpose for which the

goods were being purchased, and that Plaintiff and Class Members were relying on Defendant's skill and judgment to select and furnish suitable goods so that there was an implied warranty that the goods were fit for this purpose.

112.    Plaintiff and Class Members did in fact purchase DG Auto Obsolete Motor Oil Products with the particular purpose of using them as motor oil for their modern day automobiles.

113.    Plaintiff and Class Members did in fact reasonably rely on Defendant's skill and/or judgment to furnish suitable goods.

114.    Defendant breached the warranty implied in the contract for the sale of goods in that Plaintiff and Class Members did not receive suitable goods, and the goods were not fit for the particular purpose for which they were required in that the DG Auto Obsolete Motor Oil Products are in fact not suitable for use in the vast majority, if any, of automobiles currently in use, as set forth in greater detail above. Furthermore, by manufacturing, marketing, and distributing such products without an adequate warning and by deceptively placing them on the shelf next to legitimate motor oils, Defendant breached its implied warranty of fitness for a particular purpose.

115.    As a result thereof, Plaintiff and Class Members were damaged in an amount to be determined at trial.  They received goods they would not have otherwise purchased and which are likely to cause damage to their automobiles if used in the manner intended.  They did not receive goods as impliedly warranted by Defendant to be fit for its particular purpose and did not receive the benefit of the bargain when they purchased DG Auto Obsolete Motor Oil Products.

**COUNT V**

**Unjust Enrichment**

116.    Plaintiff hereby incorporates by reference each of the preceding paragraphs as though fully set forth herein.

117.    A benefit has been conferred upon Dollar General by Plaintiff and Class Members in their purchase of Defendant's DG Auto Obsolete Motor Oil Products.

118.    If Plaintiff and Class Members had been aware that Dollar General's DG Auto Obsolete Motor Oil Products were not suitable for use in their vehicles, they would not have purchased the products.

119.    Under principles of equity and good conscience, Dollar General should not be permitted to retain revenue that it acquired by virtue of its unlawful conduct.  All funds, revenue, and benefits received by Dollar General rightfully belong to Plaintiff and Class Members, which Dollar General has unjustly received as a result of its actions.

## DEMAND/PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and members of the Class defined herein, prays for judgment and relief as follows:

A.  An order certifying that this action may be maintained as a class action;

B.  Award to Plaintiff and Class Members of full restitution;

C.  An order enjoining Defendant from engaging in the unfair and/or deceptive acts or practices, as set forth in this Complaint;

D.  Compensatory damages;

E.  Punitive Damages;

F.  Restitution and disgorgement of the unlawful profits collected by the Defendant;

G.  An order providing for declaratory and/or injunctive relief:

1. Declaring that Defendant must provide accurate representations of the quality of the motor oil sold at its stores;

2. Enjoining Defendant from continuing the deceptive practices alleged herein; and

3. Granting other extraordinary equitable and/or injunctive relief as permitted by law, including specific performance, reformation and imposition of a constructive trust;

H. Prejudgment and post-judgment interest at the prevailing legal rate;

I. Plaintiff's attorneys' fees and costs of suit; and

J. Such other and further relief as the Court may deem necessary and appropriate.

## **JURY DEMAND**

Plaintiff and Class Members, pursuant to Fed. R Civ. P. 38(b), hereby demand trial by jury.

Dated: May 8, 2017                    Respectfully submitted,

By: _/s/ John D. Blythin_____
Shpetim Ademi (SBN 1026793)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
**ADEMI & O'REILLY, LLP**
3620 East Layton Avenue
Cudahy, WI 53110
Tel: (414) 482-8000
Fax: (414) 482-8001
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com

*and*

Allan Kanner (*admission pending*)
Cynthia St. Amant (*admission pending*)
KANNER & WHITELEY, LLC
701 Camp Street
New Orleans, LA 70130
Tel: (504) 524-5777
Fax: (504) 524-5763
a.kanner@kanner-law.com
c.stamant@kanner-law.com

*Attorneys for Plaintiff and those individuals similarly situated*